UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PATRICK DUFFY d/b/a
OXYCHEQ,

     Plaintiff,

v.                    Case No.

DAVID FORSYTH, individually;   **PLAINTIFF DEMANDS TRIAL BY**
and LAGUNA RESEARCH, INC., a   **JURY ON ALL CLAIMS DO TRIABLE**
California company,

     Defendants.

_____/

### VERIFIED COMPLAINT

     Plaintiff, Patrick Duffy d/b/a OxyCheq ("Duffy"), brings this action against defendants, David Forsyth and Laguna Research, Inc., and alleges:

### Allegations Common to all Counts

     1.   Duffy is a citizen and resident of Marianna, Florida and does business as "OxyCheq." OxyCheq is in the business of manufacturing and selling products associated with the underwater diving and analytical instrument markets.

     2.   Defendant David Forsyth is a citizen and resident of Laguna Beach, California.

     3.   Defendant Laguna Research, Inc., is a California corporation with its principal place of business in Laguna Beach, California.

     4.   Subject matter jurisdiction exists in this Court pursuant to 28 U.S.C. sec. 1332(a)(1) because this action is a

civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5.    Personal jurisdiction exists in this Court pursuant to Florida's long-arm statute, Section 48.193, Fla. Stat., in that defendants have committed tortious acts within this State that have caused injury to plaintiff within this State, all as alleged further below.

## OxyCheq

6.    Duffy served in the U.S. Navy as chief engineering officer and executive officer, and taught mine warfare.  During his time in the U.S. Navy, Duffy also became a certified and avid diver and ultimately became a SCUBA instructor with the following certification organizations:  Los Angeles County, NAUI (National Association of Underwater Instructors), and IANTD (International Association of Nitrox Divers).  Duffy also became a course director for NAUI teaching other divers to become instructors.    Duffy is currently a certified technical cave diver, rebreather diver, nitrox diver and trimix diver.

7.    Duffy started OxyCheq in the garage of his Anchorage, Alaska home in 1999 because he wanted to build an affordable oxygen analyzer.  Typical analyzers at the time cost between $350-$400.  Duffy developed a home-built analyzer that he called the "El Cheapo" which retailed for $100.  OxyCheq's El Cheapo is still sold today and currently retails for $110.  OxyCheq's technical manual, "The Home Builder's Bible for Oxygen

Analyzers," created contemporaneously with the "El Cheapo," also continues to sell to date.

8.  OxyCheq's product line grew from a single analyzer to multiple lines of analyzers as well as sensors, wings, harnesses, pockets, dive lights, back plates, and a myriad of other dive related products, though the majority of OxyCheq's income still derives from analyzer sales. Since 2001, OxyCheq has been Duffy's principle business and full time occupation. In 2007, Duffy moved to Florida and opened an 18,000 square foot facility in Marianna.

9.  OxyCheq's growth was and is a direct result of Duffy's innovative approaches in design utility -- he is always looking for a better product at a more affordable cost. This innovative approach to design utility has led to several industry wide changes in design including but not limited to: 1) redesigning "wings" (buoyancy devices) to be more narrow, streamlined and better balanced, 2) OxyCheq was the first to create a 360 degree loop on a doubles wing, 3) OxyCheq was the first to put an elbow in the center of a doubles wing, 4) OxyCheq was the first manufacturer to use "SuperFabric" (a cut and abrasions resistant material manufactured by Higher Dimensions Material, Inc.) on a wing, and 5) OxyCheq was the first to make an ultra-light back plate a.k.a. a soft back plate.

10. OxyCheq supplies products to the following organizations: the FBI, the U.S. Army, the U.S. Navy, the U.S. Air Force, the Los Angeles County Sheriff's Dive Team, and several large aquariums and universities. NASA astronauts have

used OxyCheq's wings when practicing simulations at the world's only underwater research lab in the Florida Keys.

11.  Additionally, OxyCheq is the North and South American distributer of analyzers and sensors for Teledyne Analytical Industries ("Teledyne").  OxyCheq products sell in 52 countries and U.S. Territories.

### The Contract with David Forsyth

12.  Defendant David Forsyth is a fellow dive enthusiast who met Duffy 15-20 years ago.

13.  In or about 2002, Duffy requested that Forsyth, who has a background in electrical engineering, prepare a technical drawing of his existing analyzer, "the Expedition."  This was the first project on which Duffy worked with Forsyth.

14.  In or around June 2013, Duffy again contacted Forsyth about OxyCheq's current line of analyzer products.

15.  Duffy asked Forsyth to help create a new analyzer with him to sell under the OxyCheq label.  Forsyth agreed to work with Duffy to develop the new analyzer and to prepare the technical drawings for a fee of $5,000-$6,000.  This original design was an advancement over OxyCheq's existing analyzer, the Expedition.  Added features included in this design were a custom screen, sensor millivolt and battery output, auto and manual calibration, touch pins, internal and external sensors, alarms, settings for PPO2 (partial pressure of oxygen), oxygen percentage and nitrogen.

16.  The design evolved as did the agreement with Forsyth. By January 2014, Duffy had a firm idea of the design and

4

features he wanted on his new analyzer that he titled the "Vision 1." Specifically, OxyCheq's competition in the analyzer market were basic analyzers with minimal features. Duffy wanted to create and sell an advanced analyzer that comprised all of the features listed in Paragraph 15 (custom screen, sensor millivolt, etc.) plus several additional features, including sensor and analyzer self-testing, two point calibration, visual stability bar, serial identification embedding, added pressure sensor, and reading hold button among other features. Duffy and Forsyth entered into a new agreement. Duffy and Forsyth agreed that they would work together to create the Vision 1 for Duffy to be sold by OxyCheq and that Duffy would pay Forsyth $35 per sale of each analyzer in the dive market. Additionally, Duffy and Forsyth agreed to split the proceeds from any additional sale of the analyzer technology to Teledyne or another company for use in the medical field, but that in no way was any sale to compete directly or indirectly with Duffy and OxyCheq in the dive market. Forsyth specifically and expressly agreed to not compete directly or indirectly with OxyCheq in the dive market.

17. Over the course of about two years, Duffy spent hundreds of hours on his mobile phone, office landline, Skype and via email creating the Vision 1 with Forsyth. Parts lists were compiled, various tweaks and changes were made, and parts and components were sourced. Duffy had cases fabricated and sent to Forsyth, as well as a variety of parts and tools to create the Vision 1. OxyCheq has incurred costs of over $2,500 in fabrication, components and tools.

18.    Throughout the process of developing the Vision 1
product, Duffy engaged in diligent efforts to maintain the
secrecy of the design plans and specifications on which he and
Forsyth were working.    In particular, Duffy implemented a system
whereby OxyCheq's other employee, an information technology
specialist, did not have access on his company computer system
to any of the emails or specification documents exchanged
between Duffy and Forsyth.    Duffy also barred any discussion of
the design plans and specifications for the Vision 1 product
with this IT employee in order to maintain the confidentiality
of the project.

19.    The expected date of completion of the Vision 1 was to
coincide with the large dive trade show, DEMA (Dive Equipment
and Marketing Association) scheduled in November of 2014.
However, this original deadline was not met due to various
changes that Duffy and Forsyth needed to make to the Vision 1.

20.    On or about February 16, 2015, Forsyth informed Duffy
that he had completed a functional version of the Vision 1.
Attached as Exhibit A is a photo of the finished analyzer
bearing the OxyCheq name and logo.    Duffy and Forsyth agreed
that production could start immediately in March 2015, but no
later than April 2015, so that Duffy could attend several
national and international trade shows marketing the Vision 1.

21.    On information and belief, the Vision 1 is patentable
as are parts of the technology.    Duffy and Forsyth agreed to
submit a patent pending application.    At that point, Duffy
requested that Forsyth send him the final design plans,

6

specifications and drawings so that Duffy could get started on the process and the technical manual as well as the patent application.

22.   It is at this point that the amiable collaboration broke down.  Forsyth asked Duffy to allow him to use the Vision 1 technology to make a similar analyzer for an overseas company. Duffy refused this request and demanded that Forsyth provide the finished design plans, specifications and drawings.  At that point, Forsyth insisted that Duffy sign a nondisclosure agreement essentially giving all creative rights to Forsyth. Duffy again refused.

23.   In or around February 2015, Duffy noticed that Forsyth began copying a man named Chris Yates on OxyCheq emails.  Duffy inquired as to why Forsyth was providing sensitive OxyCheq information to Mr. Yates and Forsyth responded that Mr. Yates is on the board of directors of Forsyth's company, Laguna Research, Inc.  Duffy at that point instructed Forsyth that his contract was with Forsyth, individually, and not with Laguna Research, Inc.  Duffy specifically instructed Forsyth not to share technological information with anyone.  Duffy also again demanded that Forsyth present the final design plans, specifications and drawings for the Vision 1 so that OxyCheq could begin production.

24.   On or about May 20, 2015, Forsyth informed Duffy that he was abandoning the Vision 1 project and claimed sole ownership of the analyzer and its technology and was breaching his contract with Duffy.

7

25.    On  information  and  belief,  Forsyth  and  Chris  Yates
have  contracted  to  sell,  or  offered  to  contract  and  sell,
OxyCheq's  Vision  1  to  another  company.    Any  such  sale  would
effectively  render  five  current  OxyCheq  products,  including
OxyCheq's  various  analyzers,  obsolete.    The  Vision  1  offers  more
features  than  any  analyzer  currently  on  the  market.    It
essentially  combines  the  features  found  on  existing  oxygen
analyzers  and  adds  unique  features  such  as  touch  pins  that
replace  wearable  parts  like  potentiometers  and  switches.    The
Vision  1  is  altitude  compensated,  eliminating  the  need  for  the
user  to  manually  calculate  differences  in  altitude,  has  single
and  two  point  calibration,  can  be  programmed  to  read  %  (percent)
oxygen,  PPO2  (partial  pressure),  Nitrogen,  and  can  be  used  with
an  internal  or  external  sensor  and  is  also  a  CO  analyzer.
Additionally,  it  has  novel  testing  capabilities  where  it  can
test  the  sensor  in  the  analyzer,  sensors  from  other  analyzers,
as  well  as  the  performance  of  the  analyzer  itself.

26.    The  Vision  1  will  capture  the  market  share  because  it
will  be  priced  less  than  OxyCheq's  competitors'  analyzers  while
providing  innovative  and  extremely  useful  features  that  no  other
analyzer  incorporates.    Basically,  the  consumer  is  getting  much
more  for  much  less.    The  consumer  would  have  to  purchase  several
analyzers  to  perform  just  some  of  the  functions  of  the  Vision  1.
OxyCheq  expects  to  sell  between  1,000  and  2,500  units  per  year.
In  the  month  of  May  2015,  OxyCheq  lost  over  a  100  sales  that
could  have  been  attributed  to  the  Vision  1.    Simply  put,  the

loss of the Vision 1 to a competitor would effectively put OxyCheq out of business.

27. It is impossible for OxyCheq to ascertain how many sales of the Vision 1 have been lost due to Forsyth's refusal to turn over the final design plans, specifications and drawings, and thus OxyCheq has no adequate remedy at law. The resulting harm is substantial and irreparable.

28. Unless enjoined, defendants' conduct will continue to damage OxyCheq's business and interfere with its ability to make, use and sell its products.

29. The threatened injury to OxyCheq outweighs any threatened harm an injunction may cause to defendants in the event the requested relief is granted, and granting a preliminary injunction will serve the public interest.

30. Duffy has retained the undersigned counsel to whom he is obligated to pay a reasonable rate.

## Count I:  Breach of Contract/Specific Performance

31. Duffy incorporates and realleges as if fully set forth herein paragraphs 1 through 30 of the Verified Complaint.

32. This is a claim for breach of contract and specific performance against Forsyth.

33. Forsyth breached his oral agreement with Duffy by failing to turn over the final design plans, specifications and drawings for the Vision 1.

34. Forsyth's breach has damaged Duffy and OxyCheq.

35. All conditions precedent to the maintenance of the claims alleged herein have been met, waived, discharged, performed, excused, or have occurred.

36. Plaintiff is entitled to a judgment of specific performance due to Forsyth's breach of the parties' agreement.

FOR RELIEF, plaintiff, Patrick Duffy, respectfully requests that this Court enter judgment in his favor and against defendant, David Forsyth:

A.  Requiring that, not later than fifteen (15) days from entry of the Court's Judgment, Forsyth turn over to Duffy the complete design plans, specifications and drawings for the Vision 1 product;

B.  In the alternative, if specific performance cannot be granted, awarding plaintiff his damages caused by defendant's breach of the contract, together with prejudgment and post-judgment interest at the maximum rates allowed by law; and

C.  Awarding plaintiff his costs incurred in prosecuting this action; and

D.  Entering any further relief the Court deems just and appropriate.

### Count II:  Unjust Enrichment

37.  Duffy incorporates and realleges as if fully set forth herein paragraphs 1 through 30 of the Verified Complaint.

38.  This is a claim for unjust enrichment against Laguna Research, Inc.

39.  On information and belief, Laguna Research, Inc., has been provided access to and knowledge of Duffy's conceptions and

ideas, including but not limited to the final design plans and specifications that comprise the Vision 1 product.

40.    As a direct and proximate result of the use of Duffy's conceptions and ideas in connection with the Vision 1 product, without identifying Duffy as a collaborator, Laguna Research, Inc., has been unjustly enriched.

FOR RELIEF, plaintiff, Patrick Duffy, respectfully requests that the Court enter judgment against defendant Laguna Research, Inc., in an amount in excess of $75,000, awarding plaintiff his costs incurred in prosecuting this matter, and entering any further relief the Court deems just and appropriate.

## Count III: Misappropriation of Trade Secrets

41.    Duffy incorporates and realleges as if fully set forth herein paragraphs 1 through 30 of the Verified Complaint.

42.    This is a claim for misappropriation of trade secrets, pursuant to Chapter 688, Florida Statutes, against Forsyth and Laguna Research, Inc.

43.    The design plans and specifications for the Vision 1 product derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

44.    The design plans and specifications for the Vision 1 product were the subject of reasonable efforts by Duffy under the circumstances to maintain their secrecy.

45.    On information and belief, Forsyth and Laguna Research, Inc., have passed, or are in the process of or are

preparing to pass, confidential and proprietary information regarding the Vision 1 product, including but not limited to the design plans and specifications, to third parties without Duffy's express or implied consent.

FOR RELIEF, plaintiff, Patrick Duffy, respectfully requests that the Court enter judgment in his favor, and against defendants, jointly and severally, as follows:

A.    Entering judgment in favor of Duffy for defendants' misappropriation of trade secrets;

B.    Awarding Duffy actual damages pursuant to Fla. Stat. § 688.004, interest (including prejudgment interest), and his reasonable attorneys' fees and costs incurred in prosecuting this action;

C.    Permanently enjoining defendants, and any agents, employees, and all persons acting either on behalf of or in concert with them, from providing confidential and proprietary information regarding the Vision 1 product, including but not limited to the final design plans and specifications, to anyone; and

D.    Entering any other further relief, both legal and equitable, as the Court deems just and proper.

### Count IV: Tortious Interference

46.    This is a claim for tortious interference against Forsyth and Laguna Research, Inc.

47.    Duffy incorporates and realleges as if fully set forth herein paragraphs 1 through 30 of the Verified Complaint.

48. During the course of developing the Vision 1 product, Duffy began negotiations with Teledyne to license the Vision 1 technology to Teledyne. However, those negotiations have ceased and been interfered with as a result of Forsyth's refusal to provide Duffy with the final design plans, specifications and drawings. In addition, any efforts on the part of Forsyth and Laguna Research, Inc., to strike their own deal for sale of the Vision 1 technology within the medical field, if successful, would interfere with Duffy's ability to negotiate a license with Teledyne for use of the technology within the medical field.

49. Forsyth and/or Yates had knowledge of Duffy's existing business relationship with Teledyne and Duffy's negotiations with Teledyne to license the Vision 1 technology.

50. Despite this knowledge, Forsyth and/or Yates have interfered with Duffy's advantageous business relationship with Teledyne by withholding the final design plans, specifications and drawings for the Vision 1 product.

51. The actions of Forsyth and/or Yates, on behalf of Laguna Research, Inc., were wrongful and intentional and have caused Duffy and OxyCheq to suffer damages. Specifically, defendants' actions have jeopardized Teledyne's willingness to move forward with license negotiations, thus depriving OxyCheq of the value of sales of the Vision 1 technology in the medical field.

WHEREFORE, plaintiff, Patrick Duffy, respectfully requests that this Court enter judgment against defendants, David Forsyth and Laguna Research, Inc., jointly and severally, in an amount

in excess of $75,000, together with prejudgment and post-judgment interest at the maximum rate allowed by law, for his costs incurred in prosecuting this action, and for any further relief the Court deems just and appropriate.

Respectfully submitted,

AUSLEY & McMULLEN, P.A.

/s/Martin B. Sipple
Martin B. Sipple
Fla. Bar No. 0135399
123 South Calhoun Street
P.O. Box 391 (zip 32302)
Tallahassee, Florida 32301
(850) 224-9115 – telephone
(850) 222-7560 – facsimile
msipple@ausley.com

Attorneys for Plaintiff

Attorneys for Plaintiff

<u>VERIFICATION</u>

**Patrick Duffy, being first duly sworn, makes an oath that he has read the Verified Complaint and knows the contents thereof, and that the statements in the Verified Complaint are true, based upon his knowledge, information and belief, and the information available to him.**

_____
                                                    Patrick Duffy

SUBSCRIBED AND SWORN TO before me the 15th day of June, 2015.

_____
Signature of Notary

_____
Printed name of Notary

Personally known_____
Produced identification ✓
Type of identification produced FL Drivers License
2



MARLIN J. BOYD
Notary Public - State of Florida
My Comm. Expires Jul 23, 2017
Commission # FF 032820
Bonded Through National Notary Assn



**EXHIBIT**

A